IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MILTON JOHNSON, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 11-941-WDS-CJP |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge William D. Stiehl pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Milton Johnson, Jr., seeks judicial review of the final agency decision denying him Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

## Procedural History

Mr. Johnson applied for benefits in September, 2009, alleging disability beginning on December 31, 1999. (Tr. 100).[2] The application was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) Thomas C. Muldoon denied the application on

---

[1] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

[2] Plaintiff also applied for DIB, but his insured status for DIB benefits expired on June 30, 1990. (Tr. 109). He does not raise any issue with regard to the denial of his application for DIB.

April 20, 2011.  (Tr. 10-17).  Plaintiff's request for review was denied by the Appeals Council, and the April 20, 2011, decision became the final agency decision.  (Tr. 1).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

(1)  In determining plaintiff's residual functional capacity, the ALJ failed to include all limitations established by the evidence.

(2)  The ALJ erred in his determination of plaintiff's credibility

## Applicable Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.  "[S]upplemental security income is not a form of unemployment insurance and is unavailable if any do-able work exists in the national economy, even if other persons with better skills are likely to be hired instead."  **Donahue v. Barnhart, 279 F.3d 441, 443 (7th Cir. 2002).**

For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a

claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**
If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).**

The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing.  **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**  Thus, the question for the Court is not whether Mr. Johnson was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** *Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).**

This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**  In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

<h3 style="text-align:center"><u>The Decision of the ALJ</u></h3>

ALJ Muldoon followed the five-step analytical framework described above.  He concluded that plaintiff had not worked since the application date and had no previous relevant

work. He determined that plaintiff had one severe impairment, lumbar disc disease. He found that plaintiff's alleged mental impairments were not severe. He found that Mr. Johnson's impairments did not meet or equal a listed impairment, which plaintiff does not dispute.

The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a full range of work at the medium exertional level. Referring to the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2), he concluded that plaintiff, who was 46 years when he applied for benefits, was not disabled.

### The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record, focused on the issues raised by plaintiff.

**1.      Agency Forms**

Mr. Johnson was born in March, 1963, and was 36 years old when he allegedly became disabled in 1999. (Tr. 130). He attended one year of college. (Tr. 145).

In the report of the initial interview, the interviewer said that Mr. Johnson told him that he had trouble walking and, after sitting for a long period of time, he has to "re-teach and coach" himself to walk. The interviewer noted that the interview took about one hour, and "the claimant got up and walked away from the interview with no trouble." (Tr. 132).

Plaintiff stated in a Work History Report that he had worked in construction as a carpenter from June, 1992, to December, 1999. (Tr. 133). However, his earnings records reflect no income for the years 1988 through 2011, except that he made $1,772.00 in 2004. (Tr. 110, 112-115).

Plaintiff submitted a Disability Report on September 25, 2009, in which he stated that he was unable to work because of a herniated disc in his lumbar spine and a bulge in his thoracic spine. (Tr. 141). He said that he became unable to work on December 31, 1999. He said that his doctor limited him to lifting 25 pounds and recommended that he not go back to work because of the heavy lifting. He also said that he stopped working on March 1, 1998, because his lawyer told him not to return to work. (Tr. 141).

In another report, plaintiff wrote that he does not have "normal control" over his left leg. He said that he "cannot walk without dragging" his left leg, he could not sit for long periods of time, and he had constant pain in his back. (Tr. 154).

Mr. Johnson made a prior claim for SSI, which was denied on September 9, 2008. (Tr. 43).

**2.     Evidentiary Hearing - March 2, 2011**

Plaintiff was represented at the hearing by an attorney. (Tr. 22).

Mr. Johnson testified that he lived with his mother. (Tr. 26). He was 5"4" tall and weighed about 140 pounds. (Tr. 26-27).

He hurt his back when he fell off a roof at work in 1998 or 1999. His back pain has gotten worse over the years. (Tr. 27). He was seeing Dr. Granger, who prescribed medication for him. The medication did not give him any pain relief. (Tr. 28). He began having pain in his hip about a year and a half before the hearing. (Tr. 28). Mr. Johnson testified that he is unable to control his left leg, and he drags his left leg when he walks. He said this had been going on for 10 years. (Tr. 29). His back and hip pain interrupts his sleep and interferes with his ability to concentrate. He said that he spends about 40% of his day reclining due to pain. (Tr. 30).

He applied for a medical card, but was denied.  (Tr. 34).

**3.      Medical Records**

The medical records reflect that Mr. Johnson received very little treatment.

In February, 2001, an MRI of plaintiff's lumbar spine showed moderate disc protrusion at L5-S1, and slight bulging at L3-L4 and L4-L5.  (Tr. 200).  A thoracic MRI in the same month showed disc desiccation and slight bulging of the disc at T3-4.  (Tr. 201).

Mr. Johnson began seeing Dr. Granger at Southern Illinois Healthcare in June of 2010.  He complained of "loss of control of his left leg" and pain in his back and right side.  He gave a history of having been shot in 1992 and having fallen off a roof in 2001.  (Tr. 254).  Lumbar x-rays showed no acute abnormality; he had degenerative changes at L4 through S1, with narrowing at the L5-S1 disc space.  All other disc spaces were of average width, and all of the vertebral bodies were of normal height.  There was no compression deformity, bone destruction, fracture, off set or neural arch defect.  (Tr. 260).  On exam, Dr. Granger noted "mild left leg weakness" which he rated as "three to four out of five."  He had pain with flexion and extension of the right knee and hip.  Dr. Granger noted that he had been treated by a neurologist named Dr. Reddy in the past, and he referred him back to Dr. Reddy.  (Tr. 253).

Plaintiff returned to Dr. Granger in October, 2010.  Dr. Granger noted that "He is doing fine, just needs some medication adjustments."  Dr. Granger prescribed Naprosyn and Ultram to be taken as needed for back pain, and Levitra for erectile dysfunction.  He noted that Mr. Johnson had an appointment to see a neurologist.  In December, 2010, Mr. Johnson was still complaining of pain in his hip and low back, along with erectile dysfunction.  Dr. Granger noted that he had pain with flexion of the hip area and pain in the low back with range of motion.  His plan was to

prescribe medication and recommend "lifestyle modification." He advised Mr. Johnson to start an exercise program once his hip was "cleared for any severe damage by x-ray and/or MRI." (Tr. 249).

At the hearing in March, 2011, plaintiff's attorney said that plaintiff had not seen a neurologist or had an MRI. He was scheduled to see Dr. Granger on the day of the hearing. The ALJ agreed to hold the record open for thirty days for the submission of additional medical records. (Tr. 24-25). No additional records were submitted.

**4.**     **Consultative Examinations**

Dr Vittal Chapa examined Mr. Johnson in August, 2008, in connection with his prior application for benefits. Dr. Chapa noted that his complaints were "multiple and vague." He reported to Dr. Chapa that he had been told many years ago that he had a herniated disc. On examination, he was able to bear weight and to ambulate without any aids. Neurological examination was normal. He had no motor weakness or muscle atrophy. He was able to sense pinprick on both legs. Knee and ankle reflexes were symmetrical. He had no joint redness, heat, swelling or thickness. There was no muscle spasm. Hand grip was full and equal, and he was able to perform both fine and gross manipulations. Straight leg raising was negative on both sides. Dr. Chapa noted that "Subjectively, the claimant stated that he cannot bend forward to test the range of motion of the lumbosacral spine." He had a full range of motion of all other joints. Mental status exam showed that he was alert and oriented, able to answer questions appropriately and in good contact with reality. Dr. Chapa concluded that "Physical examination is essentially unremarkable." (Tr. 202-205).

Dr. Adrian Feinerman examined Mr. Johnson on December 15, 2009. Mr. Johnson told

Dr. Feinerman that he had worked doing "home improvements" until 2001. He said he had hurt his back at work in 2000, and had back pain since then. He complained of pain radiating into his left leg, and said he had "trouble controlling his left lower extremity." He had a prior history of a gunshot wound to the left lower extremity. On examination, he had a full range of motion of his extremities. Ambulation was normal without an assistive device. He was able to walk 50 feet with no pain in his weight bearing joints. There was no anatomic deformity of his spine. He had a full range of motion of the cervical spine, but had some limitation of the lumbar spine. He lacked 60 degrees of flexion, 15 degrees of extension and 10 degrees of lateral flexion of the lumbar spine. Straight leg raising was negative. Muscle strength was normal throughout, with no spasms or atrophy. Grip strength was strong and equal. Fine and gross manipulations were normal. His mental status exam showed normal appearance, behavior, memory, concentration and ability to relate. Dr. Feinerman concluded that Mr. Johnson was "able to sit, stand, walk, hear, and speak normally." Further, he was able to "lift, carry, and handle objects without difficulty." (Tr. 214-222).

On December 1, 2009, Harry J. Deppe, Ph.D., performed a psychological examination. Plaintiff told Dr. Deppe that he had a history of marijuana use, but had never been treated for drug or alcohol problems. He had been suspended from school for fighting, but had never been expelled. He had never been arrested. He had never been treated by a psychiatrist or a psychologist. He said that he had been suffering back pain since he hurt his back in a fall in 2001. He had not had surgery and was not taking any pain medication. He was not under the care of a doctor. Mr. Johnson told Dr. Deppe that he had been employed as a carpenter for 20 years, but he had not worked since his injury. He also said that the company fired him because

he sued them. On mental status examination, his mood was within normal limits and he had a full range of affect. He was cooperative and friendly. He had no formal thought disorders. He had no difficulty staying focused and responded to questions in a coherent and relevant fashion. He was oriented to time, person and place. His fund of general knowledge, abstract reasoning skills, judgment, insight and ability to perform simple calculations were all rated as good. Dr. Deppe's clinical impression was that Mr. Johnson's abilities to relate to others, to understand and follow simple instructions, to maintain attention required to perform simple, repetitive tasks, and to withstand the stress associated with day-to-day work activity were all fair to good. The diagnosis was cannabis abuse in partial remission and adjustment disorder with mixed emotional features.

**5.**      **Residual Functional Capacity Assessment**

On December 23, 2009, state agency consultant C. A. Gotway, M.D., completed a Physical RFC Assessment. This assessment was based on a review of medical records. He concluded that plaintiff had the physical RFC to perform a full range of work at the medium level (frequent lifting of 25 pounds and occasional lifting of 50 pounds with ability to sit, stand, or walk for 6 out of 8 hours, and unlimited ability to push/pull). He noted that Dr. Feinerman diagnosed lumbar disc disease, but found no neurologic restrictions of motor functions. Dr. Gotway also noted that Mr. Johnson had no medical treatment since 1999 and had never had any mental health treatment. (Tr. 237-244).

State agency consultant Donald Henson, Ph. D., completed a Psychiatric Review Technique form on December 16, 2009. He concluded that Mr. Johnson had only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace,

and that he did not have a severe mental impairment. (Tr. 223-236).

## Analysis

Plaintiff's two points are related, since the assessment of his credibility necessarily informs the determination of RFC.

Plaintiff argues that the ALJ's credibility determination should be overturned because it was "perfunctory" and was expressed in boilerplate language that has been criticized by the Seventh Circuit.

Plaintiff correctly points out that ALJ Muldoon used the boilerplate language that has been repeatedly criticized by the Seventh Circuit. See, **Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012), and cases cited therein.** However, it is not the use of the boilerplate language in and of itself which is objectionable; it is the use of the boilerplate language unaccompanied by findings which are supported by evidence in the record. **Shauger, ibid; Shideler v. Astrue, ___ F.3d ___, 2012 WL 2948539, *405 (7th Cir. 2012).**

Here, the ALJ gave valid reasons for finding that plaintiff was exaggerating the intensity, persistence and limiting effects of his symptoms. He had given conflicting statements about why he stopped working. His work history was sporadic. He had received very little medical treatment over the years, and the type of treatment he did receive was not indicative of a disabling condition. Both examining doctors noted that "there were very little, if any, objective findings to support the claimant's allegations of excruciating pain." Dr. Chapa described his physical exam as "essentially unremarkable," and Dr. Feinerman reported that Mr. Johnson was able to sit, stand and walk normally. There was no indication that plaintiff had the kinds of symptoms that are associated with chronic, severe musculoskeletal pain, such as muscle spasms,

neurological defects or other signs of nerve root impingement, significantly abnormal x-rays or other tests, or bladder and/or bowel dysfunction. (Tr. 15-16). All of these are valid considerations. See, 20 C.F.R. §416.929(c)(3); SSR 96-7p.

Plaintiff quarrels with some of the ALJ's reasons. For instance, he complains that the ALJ did not explain how giving conflicting statements about why he stopped working would detract from the credibility of his statements on other subjects. However, the point is so obvious that it needs no explanation. He argues that the ALJ was wrong to say that plaintiff's alleged symptoms are not supported by objective evidence, pointing to the MRI and x-ray reports. On the contrary, the ALJ correctly noted that those studies showed only mild degenerative changes resulting in disc bulges, and no herniation. This is a proper consideration since "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." ***Getch v. Astrue***, **539 F.3d 473, 483 (7th Cir. 2008)**.

The ALJ considered the relevant factors regarding plaintiff's credibility, and the reasons he gave for his findings were supported by evidence in the record. The fact that he did not weigh the factors the way plaintiff would like does not mean that his credibility determination was legally insufficient. Plaintiff has not demonstrated any error with regard to the credibility findings. As the ALJ's credibility findings were not "patently wrong," they should not be overturned. ***Powers v. Apfel***, **207 F.3d 431, 435 (7th Cir. 2000).** See also, ***Castile v. Astrue***, **617 F.3d 923, 930 (7th Cir. 2010)**, holding that credibility findings should not be overturned where the ALJ "thoroughly examined the evidence and clearly articulated his findings."

Plaintiff's other point is similarly weak. He argues that the ALJ should have included limitations in walking and bending, along with some mental limitations, in his RFC assessment.

RFC is "the most you can still do despite your limitations." 20 C.F.R. §1545(a). In assessing RFC, the ALJ is required to consider all of the claimant's "medically determinable impairments and all relevant evidence in the record." *Ibid.* Obviously, the ALJ cannot be faulted for omitting alleged limitations that are not established by the record.

As evidence for his alleged limitations in walking and bending, plaintiff relies on his own testimony, the x-rays, and the consultative examinations. However, the ALJ considered all of the evidence and gave his reasons for the weight he assigned to it. This is not a case in which the ALJ overlooked or ignored a line of evidence. See, e.g., **Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009).** Rather, plaintiff is contesting the manner in which the ALJ weighed the evidence. Plaintiff's argument is an invitation to reweigh the evidence, which this Court cannot do. It is the function of the ALJ, and not this Court, to weigh the evidence and decide conflicts, and this Court cannot substitute its judgment for that of the ALJ. **White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005).**

Plaintiff quarrels with the ALJ's discussion of the examining doctors' reports, but the ALJ's discussion was an accurate description of what the doctors wrote. He suggests that the ALJ reached his own medical conclusion by noting that Mr. Johnson did not demonstrate symptoms that are typically associated with chronic, severe musculoskeletal pain. He is incorrect. The symptoms considered by the ALJ are symptoms that have been identified by the agency as indicative of a disabling musculoskeletal condition. See, Listing 1.104, 20 C.F.R. Pt. 404, Subpt. P, App.1. The ALJ was not speculating or forming his own medical opinion; he was relying on the agency's own regulations. See, **Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990),** noting that the agency's "medical expertise ... is reflected in regulations."

Mr. Johnson also argues that the ALJ should have included a mental limitation in his RFC, based on Dr. Deppe's report.  However, Dr. Deppe concluded that plaintiff had fair to good abilities to relate to others, to understand and follow simple instructions, to maintain attention required to perform simple, repetitive tasks, and to withstand the stress associated with day-to-day work activity, which does not support plaintiff's argument.  Plaintiff suggests that, because Dr. Deppe rated his ability to follow simple, but not complex, instructions, the ALJ erred by not seeking clarification or assessing a limitation with regard to complex instructions.  However, most work requires the ability to understand, carry out and remember *simple* instructions.  20 C.F.R. §416.921(b).  Thus, Dr. Deppe's report indicates that Mr. Johnson has the ability to meet the basic mental demands of most work.  Further, as there is no indication in the record that Mr. Johnson was limited with regard to complex instructions, this argument is a red herring.

The ALJ's assessment of plaintiff's RFC was supported by the opinion of state agency consultants.  It is proper for the ALJ to rely upon the assessment of a state agency consultant.  **Schmidt v. Barnhart**, 395 F.3d 737, 745 (7th Cir. 2005); **Cass v. Shalala**, 8 F.3d 552, 555 (7th Cir. 1993).**  "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling 96-6p, at 2.**  Here, the opinions of Drs. Gotway and Henson provide sufficient support for ALJ Muldoon's RFC assessment.

<u>**Recommendation**</u>

After careful consideration, this Court is convinced that the decision of the ALJ is supported by substantial evidence in the record as a whole, and that no errors of law were made. Therefore, this Court recommends that the final decision of the Commissioner of Social Security,

denying plaintiff Milton Johnson, Jr.'s application for disability benefits, be **AFFIRMED.**

Objections to this Report and Recommendation must be filed on or before **September 17, 2012**.

**Submitted:  August 29, 2012.**


  s/ Clifford J. Proud
  **CLIFFORD J. PROUD**
  **UNITED STATES MAGISTRATE JUDGE**